Good morning. May it please the Court. Michael Moore from Corcoronan for Appellant T-Mobile USA. I wanted to start this morning with the issue of estoppel, since it is the threshold issue presented by T-Mobile's appeal in this case. I think the issue that Your Honors probably want to hear from us about are the threshold issues set forth in the Court's order. And I was hoping to address them, explain our position on those today. Those threshold issues are the question of whether or not a stopping selective from asserting the tender defense and these alleged problems with T-Mobile USA's tender would result in expansion, as the trial court's order put it, an expansion of the coverage at issue. And whether or not T-Mobile had made up the requisite prima facie showing of coverage for estoppel to apply. So taking those issues in order, the trial court's order relied on the Sanders decision from the Washington Supreme Court. That case is a simple case about estoppel, stands for the proposition that estoppel may apply to bar an insurer from asserting defenses that were not initially raised in its coverage denial. The question then becomes whether the estoppel is applied to prevent the insurer from asserting a technicality like we contend occurred here, a technical defect with regard to the underlying tender, for example, or whether it would result in a substantive expansion of insurance coverage. Can you explain to me why, when you had at least a month's notice and an opportunity to do so, you did not amend your complaint to add T-Mobile Northeast? Of course, Your Honor. The trial court, the trial court's order made it clear that we needed to meet the good cause standard for amendment. Well, pardon me. I don't want to interrupt my colleague, but you were on notice in August of 2015 of the tender defense, and the action wasn't commenced until September 2015. So you didn't have to even amend. You just had the name in, Mobile Northeast. With all due respect, Your Honor, I don't believe the record supports that conclusion. The notice that you're referring to is what we termed the Cohane email, the email that provided allegedly notice of this assertion that T-Mobile USA was not a covered party. That email, and the record is very clear on this, the language of that email did not raise that issue. It said, T-Mobile is not entitled to a defense. Up to that point, all of the correspondence was between T-Mobile USA and Selective. There was never any mention of T-Mobile NE, or Northeast, so that the only party to the correspondence, if you believe that there are two corporations, which I think we have to believe, was T-Mobile USA. Yes, let's break that down, Your Honor. There are a few issues with that allegation. One is the clear obligation under Washington law, it's part of the WACs, that if you are going to deny coverage, you need to provide a specific explanation. Right, and the first denial of coverage was the professional service exclusion. We're talking about the Cohane email. Just the one-line statement that T-Mobile, not T-Mobile USA, T-Mobile is not an additional insurer of the policy. Your question is, is that a sufficient explanation of coverage? And the response is, it is not under Washington law. Because if you are going to take the position that that statement is enough, you have to measure it against the WACs, with all due respect, and the WACs require a detailed explanation of the policy terms and conditions so as to provide reasonable notice to the receiving party of the assertion, of the defense that you're asserting. I'm not sure you've answered my question. I will, Your Honor. Yes, I will. And so we have, and I would direct, Your Honor, to the Seaway case. It's a Judge Jones decision from the Western District where the denial is almost identical to the denial at issue in the Cohane email. Just a blanket statement that you do not qualify as an insurer of the policy. And what Judge Jones did is look at the WACs, look at Washington law, and Washington law applies in this case, and confirmed that that kind of blanket statement without an actual explanation of why you are not an additional insured, that is what is required under Washington law. So is your answer to my question that T-Mobile didn't really have notice that it needed to name Northeast? Are you talking about after the court's order or pursuant to the Cohane email? I'm concerned about this one month period that Judge Bea focused on. I mean, at that point in August of 2015, it should have been clear to you that there was a question raised by Selective as to which T-Mobile entity was implicated in the litigation. And the simple thing to do would have simply been to name T-Mobile Northeast, and you had 30 days to do it before you filed suit. But you didn't. Yeah, Your Honor. Again, I think you need to look at the substance of the notice and whether it complies. And so I want to make sure I understand your argument. Is your argument that that email simply was not sufficient to inform us that there was a dispute as to which T-Mobile entity was implicated? Yes, Your Honor. Is that what you're telling us? That is the argument, because there is nothing in that email that refers to a distinction between the parties. There is nothing in that email that complies with WAC 2430 in terms of setting out the policy provisions. For example, we talk about this in kind of an ethereal fashion. If that email had just said, T-Mobile USA is not under the policy, the underlying FSA, which Selective had in hand at the time, names T-Mobile Northeast, what would T-Mobile have done? And the testimony is quite clear on this, Your Honor. We submitted the testimony of the claims examiner who denied the claim. He testified about the substance of that email, whether it was sufficient, whether it provided the requisite notice to T-Mobile of the actual basis for the denial. And he testified under oath it did not. So we're not talking about just kind of this ethereal application of the law, whether that notice is sufficient in isolation. We actually have testimony on that issue. We have testimony on that issue from the claims examiner, and we have testimony on that issue from the receiving party. So the answer to the question is you did not do it because you thought you didn't have to? The answer to the question is T-Mobile received that email after two years of requesting an explanation of why it was not getting a defense. It received a one-line explanation that the claims examiner at issue for that file has already testified under oath and admitted was not sufficient to put T-Mobile on notice of an alleged inadequacy with regard to the tender. His testimony is clear. We also have the testimony from the party that received that email, Ms. Bauer, in the form of a declaration that's in the record saying I received that email. I did not understand it to in any way raise a distinction between T-Mobile USA and T-Mobile Northeast. But hadn't the company taken the position when the claim was initially tendered that T-Mobile USA was not implicated in any way in the construction of this cell tower in New York and therefore couldn't be liable? Yes, Your Honor, and that is part of Judge Robart's, in other words, if I understand you correctly, you're raising this distinction that T-Mobile USA drew with regard to T-Mobile Northeast in relation to the Well, clearly the company created a wholly owned subsidiary in order to protect the parent company from liability. That's one of the reasons you do that, is it not? Right. And I think it's important to keep in mind the reason why the claim was tendered in this fashion is the certificate of insurance that T-Mobile USA had in hand that was supplied by Selective that indicated that T-Mobile USA was the insured party for purposes of submission of this claim. But that assumes, does it not, that there is in existence another contract, the Field Services Agreement, that establishes the contractual relationship between the company that did the actual installation work and T-Mobile Northeast? I mean, this may be a question for Selective's counsel, but I found the documentation to be somewhat ambiguous. On the one hand, it purports to name T-Mobile as an insured, but then has a whole bunch of language seemingly excluding professional services and anybody that doesn't have a contractual relationship with Innovator. Yeah. Again, I think the record is clear that T-Mobile tendered it in this fashion. We have a declaration testifying to this. T-Mobile tendered it in this fashion because it was basically instructed to do so pursuant to that certificate of insurance. And that if Selective had actually raised any distinction between the parties at all, it would have been very easy for T-Mobile. How else should Ms. Bauer, I'm looking at ER-297, the August 19, 2015 email, how else can you interpret the sentence in which she was told, quote, T-Mobile does not appear in the Selective policy named as an insured. It does not qualify as an additional insured. That is why Selective is not defending T-Mobile. It is that second sentence that is key. The assertion that T-Mobile does not qualify as an additional insured. The question and what Washington law requires as an answer to that question is why. Okay? If that email had drew a distinction between T-Mobile USA or T-Mobile Northeast in any fashion whatsoever, that would have put T-Mobile on notice of the issue and T-Mobile could and would have cured it. Why shouldn't that be interpreted in the context of the first sentence that says T-Mobile is not named as an insured? Because it's not named under the insurance. The policy has a named insured, the primary insured innovated. Right. It then has an endorsement, an additional insured endorsement. Which in essence gives whoever is named on the endorsement the status of being a named insured, does it not? No. Isn't that the purpose? No, you gain status as an additional insured. So that first sentence is irrelevant. But doesn't that mean that the insurance policy covers the named additional insured if there's a claim? That there is no named, there is no such thing as a named additional insured. You have the primary insured that's named in the policy, you have an additional insured endorsement. Right, but isn't the purpose of the endorsement to provide insurance protection to the entity that is named in the endorsement? I thought that, I mean, am I totally misunderstanding what a named additional insured is? The additional insured endorsement does not actually name anyone. The additional insured endorsement I'm not asking just in this case. I'm asking you sort of general insurance law. I thought that was the whole purpose of a named additional insured. So you have an insurance policy. It contains a primary insured. You then have an additional insured endorsement. That additional insured endorsement doesn't actually name someone as an additional insured. It indicates that if there is a contract that falls within the language of that provision between the primary insured and some unidentified third party. In this case, it was the field services. Yes. Then that unidentified party, who's not identified in the endorsement, would qualify as additional insured. Which then means that it gets the same rights to defense and liability coverage as the insured. Exactly. Right? And so the question is, was that notice sufficient under Washington law? Counsel, I'm curious about something. Assuming Selective changed their position and assuming there was prejudice from the change in position, who would have suffered? Who would have suffered as a result of that prejudice? Well, T-Mobile is suffering. T-Mobile USA? Certainly, it seems to me T-Mobile Northeast would have suffered because it was the entity entitled to tender its own claim. Well, T-Mobile USA had to pay the costs on behalf of T-Mobile Northeast because Selective refused to provide the required defense. So both T-Mobile Northeast Your position is both of them would have. Well, T-Mobile Northeast initially suffered because it was deprived of the defense that was owed under the policy. And then T-Mobile USA suffered as a result of the fact it had to pay those costs. I thought the insurer agreed to defend with a reservation of rights. No, Your Honor. That's the heart of the problem in this case and the heart of the inconsistent and irreconcilable coverage position taken by Selective. There were two insurers, both of which were owed a defense, the primary insured Innovative, the additional insured T-Mobile. But didn't the insurance company, at least as to Innovative, accept the tender with a reservation of rights and provide a defense and ultimately settled the claim with the owner of the building? It settled the claim and provided a defense to one party and didn't provide that defense to the other. But your damage, to answer Judge Black's question, is the amount of money that T-Mobile had to pay in its own legal fees. That's correct. It's the half a million dollars in legal fees that went unreimbursed. And so again, the question is, was that notice sufficient? Under Washington law, it is clearly not. And we have the Seaway decision that is directly on point from Judge Jones saying a blanket statement that you don't qualify as an insured does not comply with Washington law. And at a minimum, at a minimum, the question of the sufficiency of that notice, was it adequate to put T-Mobile on notice? Did T-Mobile suffer prejudice of that? That's a question of fact. And we already have in the record unopposed testimony from both the claims handler at issue and T-Mobile that the notice was not sufficient. Mr. Parlin himself, the claims examiner responsible for this file. So your argument is we should reverse and remand with directions to grant summary judgment for T-Mobile because there is not a material fact issue in dispute? Well, if you have testimony from the two interested parties involved. Isn't the answer yes? That's what we're asking for. That is a reasonable conclusion. OK. But at a bare minimum, there's a question of fact about that issue. Well, I thought you just said everybody agreed. Well, everybody does agree. But then how can that be a material issue of fact that a jury needs to agree? I would agree with that statement, Your Honor. Summary judgment is appropriate in T-Mobile's favor on the issue. And so I just wanted to talk briefly for the last minute about this allegation. The last minute is, you've overrun a minute, but we'll give you two minutes for a rebuttal. OK. Thank you, Your Honor. Good morning, Your Honors. Michael Marone from McElroy-Deutsch Mulvaney & Carpenter here from New Jersey on behalf of Selective Insurance Company of America. With me at council tables, Jeff Tindall, the Betz firm from Seattle. Judge Trollman and Judge Beda, to pick up right on the question that you asked counsel with respect to that issue of notice and why they didn't amend and why didn't they simply plead a case against T-Mobile Northeast, I respectfully submit the evidence is very clear that they had requisite notice. It is, it's, it begins with, and I think just to point out some important aspects of the question from the court, Ms. Bauer, Lisa Bauer, in the record at page 159, she sends an email to Mr. Cohen who responded via the document you referenced, Judge Trollman, at 297. Her email, it should be noted, she is the insurance and claims manager for T-Mobile, one of the largest telecom companies in the world. And she asks for an understanding why Selective is not defending, but importantly in her subject line, she says, request for immediate defense and indemnity on behalf of T-Mobile USA. So it is a specific request for T-Mobile USA coverage, as had every single communication to Selective before that. They always asked for coverage on behalf of T-Mobile USA. Mr. Cohen, a few days later, August 19, 2015, he very specifically says T-Mobile does not appear in the Selective policy named as an insured. It does not qualify as an additional insured. That is why Selective is not defending T-Mobile. But he doesn't say why he doesn't qualify, why USA doesn't qualify as an additional insured. He doesn't say it in that email, Your Honor. Fair question. Ms. Bauer, as the insurance and claims manager, I think it's a fair question to ask, what is she possessed of as of the date she issues her inquiry to Selective? She is possessed of the field service agreement, which is in the record at page 499. The field service agreement, July 8, 2010, was one of the first documents that was sent to Selective with the tender, a specific tender that asked for coverage, once again, for USA, T-Mobile USA. Could you please address the claim that was made, or the argument that was forwarded by your learned friend, that Judge Jones in the Seaway case said that a denial without an explanation of why is not sufficient notice, do you agree with that? I agree with the statement that that court made. I don't agree that given the totality of the evidence that was possessed of T-Mobile USA, their position in the FSA, where they had sent this document to Selective, and this is to answer your question, Judge Bauer. I guess what you're saying is you agree that Judge Jones said it, but you don't agree that that's correct law. No, no, I don't. There's supposed to be an explanation, but what we contend, Your Honor, is that at that point in time, there was a sufficient explanation vis-a-vis the information that had been exchanged between the parties, and vis-a-vis Mr. Cohane's notice, and some subsequent communications that occurred after Mr. Cohane's notice. But I think importantly for the court, the FSA that was sent with the original tender, T-Mobile USA asks for coverage. The FSA in the record on page 503 says, T-Mobile USA goes out of its way in this document to make it clear that it is not a party. The words in section 5.2 of the contract say, T-Mobile USA, Inc. is not a party to this agreement, and that in no event will T-Mobile USA have or incur any liability of any type or character under this agreement. So, if that is then connected to the clear and unambiguous insurance policy language, where for an additional insured to qualify automatically, as the court correctly stated, that's in the record at page 576. The language in the policy says, who is an insured is amended to include as an additional insured any person or organization whom you have agreed in a written contract or written agreement to add as an additional insured on your policy. So, we know that when Ms. Bower wrote her letter and then Mr. Cohane responded, Ms. Bower did have the policy at that time. She had that language and she also had the field services agreement. And that is exactly the basis for Mr. Cohane's notification. Now, some subsequent communications, I submit, are also important for the court's consideration. There was a letter from Mr. Moore on August 25, 2015, where he, again, specifically, this is in the record on page 800. His request for coverage at that point is still asking for coverage for T-Mobile USA Inc. only, even after the Cohane email was sent. He, Mr. Moore, cited in his letter on page 801 in the record that T-Mobile has incorrectly claimed that T-Mobile does not qualify as an additional insured under the policy. So, it's clear at that point before the filing of the complaint, counsel for T-Mobile clearly understood that USA did not qualify as an additional insured, or at least that that was the position that Selective had advanced. And to further tie that knot up was a letter... Was there any indication in that letter of August 25 that he didn't know why he didn't qualify? And was he asking any questions as to why he didn't qualify? He did not. There's no reference in there, Your Honor. It was a notice to bring an action under the Washington Insurance Fair Conduct Act. And the Cohane email is clearly referenced in there. And it's at this point, again, to connect the FSA with the insurance policy language, which is clear and unambiguous. There's no other way but to understand that Selective had placed T-Mobile USA on notice that it did not qualify as an additional insured. And the last piece of communication, September 29, 2015, is a follow-up from Mr. Tindall. And there, Judge Bea, this may go to at least in part your question, whether there was ever any questions teased out on who are you tendering on behalf. Mr. Tindall went through in the record on page 805. He essentially says to Mr. Moore, I've walked you through the policy. He quotes that in his letter. He says that in order to be an insured, you have to show me that T-Mobile USA has a written agreement with Selective's named insured, Innovative, and the only document you've ever given me is one that says T-Mobile USA is not a party to a contract with Innovative. Help me understand. That was clearly set forth. In fact, Mr. Tindall asked Mr. Moore on page 805 of the record, you have confirmed that T-Mobile made the tender on its own accord, not on behalf of Omnipoint. If I am mistaken, please advise immediately. So counsel for Selective is raising the issue as to where's the agreement? Where's the coverage? Because our position is crystal clear that T-Mobile USA does not have a written agreement. I may have cut off Mr. Moore as to another issue in this case, and I'd like to see, I'll give you more time to talk about it, but what about the certificate of insurance by your agent saying that T-Mobile was indeed covered? How do we handle that? I submit that Judge Robart handled it precisely as it should be, and I know this is de novo review, but he provided an excellent guide in his decision where certificates of liability insurance, Judge Bea, and the one at issue here is in the record on page 641. It is clear that there is disclaimer language in the certificate of liability insurance. And it says, quote, this certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policies below. This certificate of insurance does not constitute a contract between the issuing insurers, authorized representatives or producer, and the certificate holder. How do we square that with the Washington law in Chicago title that says an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of the agent's real or apparent authority? Isn't that contradictory to what you just said? Well, the courts around the country that have looked at this, Your Honor, have dealt with that, grappled with it, and they look at the agency agreement. The agency agreement between Selective and Van Dyck here in the record at page 1063 provides authority for that agent to execute and issue binders, policies, and certificates for such insurance or bonds accurately reflecting then current terms and limits. Here the agent broker did not do that. So it wasn't within their authority to issue an inaccurate certificate of insurance. It's why in these accord forms this disclaimer language is in there. So the courts try to reconcile what Your Honor quoted as the law of Washington versus Your position is that VDG was not acting within its real or apparent authority? It provides guidance as this Court moves toward what its instructions are, what the Ninth Circuit Court of Appeals instructions are to a district court judge sitting in diversity when you're trying to predict what Washington State will do with a certificate of insurance. Washington State has law on the issue of what to do with a certificate of insurance. Intermediate court law. Pardon me? Intermediate court law, but the Washington Supreme Court, we haven't been able to find any clear case saying whether a certificate of insurance does or does not extend coverage. Not in the Supreme Court, and this Court gives guidance to its district court judges then sitting in diversity that they must. You're relying on ABCD? Yes, I am. Yeah, but their representation was made by the insurance agent, not by the insurance company's agent. Quite different. Understood, Your Honor. And we believe, though, that that is instructive on how the Washington Supreme Court would rule in any event. Do you object to our certifying that question to the Washington Supreme Court? Pardon me? Would you object to our certifying that question to the Washington Supreme Court? We would, Your Honor. We don't think it's necessary. We think there's a real distinction, too, with this certificate of insurance. If you look at the courts around the country, how they've dealt with this, and we submit that with ABCD and Prosely Wait, which is the Washington Supreme Court, that there is a clear, clear direction that Washington is heading, that Washington would agree with the majority of courts around the country. But an important distinction, this certificate of insurance that T-Mobile USA claims to rely upon be confused by, even though it has that specific disclaimer language. The certificate is dated January 18, 2012. The work that was performed, Your Honor, the cell tower work on the building in New York City, it was performed in the year 2006. The courts that go toward the minority view around the country, in the vast majority of the circumstances, the certificate is presented to a contractor who then, and only upon receipt of it, permits the work to go forward. This is a certificate of insurance issued six years after the work is commenced. What's the relevance of that? The minority of courts say that because that set in motion, it permitted the work to be done, it then, in their opinion, trumped the clear disclaimer language in the certificate of liability insurance. But in this circumstance, where we have the work gone and behind us, then I submit, Your Honor, Washington would go the way of the majority view, according to ABC. We've taken you over your time. Thank you very much. Thank you, Your Honor. Mr. Moore, I'll give you a couple of minutes for a rebuttal. I'm sorry I cut you off on that other issue, but you may want to address that. If I may, I'll start with that issue, the agency issue. And just picking up with Mr. Marone's comment, this is a claims-made policy. So what matters is the certificate of insurance in place at the time the claim is made. 2012 Certificate of Insurance. Also worth noting, there were six prior Certificates of Insurance issued by Selective that contained the exact same language. They're also in the record. On the agency front, your question, Judge Beyer, was how do we square the conflicting Washington law that clearly establishes under Chicago title the fact that insurers are bound by their agents' representations like this? And this Certificate of Insurance? And the answer to that is sumitomo. That case clearly lays out the path for squaring those two things. The postal weight case that is relied on by the trial court and Selective has quite literally nothing to do with this Certificate of Insurance issue in this case. Postal weight did not relate in any way to a claim that someone was an additional insured. We are not claiming that the Certificate of Insured made T-Mobile U.S. insured for all purposes. All we are saying is the Selective is a stop from denying T-Mobile U.S.'s ability just to tender this claim, a claim for T-Mobile Northeast defense costs on behalf of T-Mobile Northeast. Mr. Moore, if the language in the field services agreement that T-Mobile USA is not responsible and is in no way involved in the contract with Innovative means what it says, then what language in another contract would we look to to determine that it is indeed an insured? Well, again, I think you're, with all due respect, I think you're mixing apples and oranges. And this is an issue that the trial court resolved. Judge Robart resolved this issue and said, and I'm paraphrasing, there's absolutely no inconsistency between T-Mobile U.S. asserting that it could be an additional insured under the policy and its contention that the underlying plaintiff could not sue it directly on a contract to which T-Mobile U.S. was not a party. Selective has not challenged that finding on appeal. It is a verity for purposes of appeal. So while I mean no disrespect, that issue is not part of this and so they've raised it. So getting back to the evidence on the notice issue, because that really is the core issue that I hear your honors referring to. Let's start with the law on the issue. And it's Seaway again. And I'm quoting, I want the record to be as clear on this as I possibly can. Judge Jones ruled that Fireman's Fund, who was the insurer in that case, sole reliance on the unreasonable assertion that Seaway, the insured, was not an additional insured. That statement alone was insufficient as a matter of law. And he cited to WAC 284-30-330 for that proposition. So the idea that one line of the Cohey mail is sufficient is simply not correct under Washington law. I don't understand that to be the position taken by Mr. Maroney, that and other evidence. Well, but the question is whether, under the trial court's order, the question is whether the Cohey mail provided sufficient, a sufficient explanation of the fact that Selective was taking the position that T-Mobile U.S. was not an additional insured. That's the question. I think we've got your point. Yeah. Thank you for taking over your time. Thank you very much. And thanks, both counsel, for a very well presented and informative argument. And the case of T-Mobile versus Selective will be submitted. And we'll go to the next case on the calendar, which is Matthew Goodman versus Berryhill.
judges: Tallman, Bea, Black